The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 **********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 11 April 1997 and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The parties are properly denominated in the caption.
2. An employer-employee relationship existed between plaintiff-employee and defendant-employer on 7 March 1996.
3. Weyerhaeuser Company was self-insured at the time of the alleged accident.
4. On the date of the alleged accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. All parties are before the Commission for hearing and the Commission has jurisdiction of the parties and the subject matter.
The parties also stipulated into evidence the following documents:
1. Medical records and reports attached to a written stipulation.
2. One page of medical reports by Dr. Jeon.
3. Six pages of additional medical records from Dr. Hardy.
4. Two Forms 22 dated 10 June 1997.
 ***********
Based upon the evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. Plaintiff began working for defendant in February 1990 at its plywood plant in Plymouth. Plaintiff held several positions during the period of his employment. The last position plaintiff held was as a TNG operator, which he began in 1995. This position involved working with the TNG saw to cut tongue and groove impressions on the sides of pieces of plywood. Plaintiff's job duties included lifting the plywood from the out-feed table and putting it on one of two carts. Plywood which was off grade would go onto the cart located behind him. When that cart was full, it could be a much as six feet in height.
2. On or about 7 March 1996, plaintiff was working in his position as a TNG operator. On or about that date, the cart designated for off grade pieces was nearly full when plaintiff came to another off grade piece. As plaintiff began to place this piece into the cart, he twisted around and upward to do so. As plaintiff performed this movement, he experienced the immediate onset of sharp pain in his back.
3. As plaintiff went for his morning break on or about 7 March 1996, he informed a co-worker, Mr. James Bunch, of his back injury and described how it occurred. Although Mr. Bunch could not recall the specific date on which this occurred, he did confirm that it took place in March 1996. Mr. Bunch also testified that plaintiff had never mentioned any problems with his back prior to this occurrence. Plaintiff also informed his supervisor, Mr. James Collier, of the incident on the date it occurred. Plaintiff's testimony regarding the circumstances of his back injury and his reporting of this incident to defendant's employees, including his supervisor, is accepted as credible.
4. On 11 March 1996, plaintiff reported to his family physician, Dr. Myung-Kil Jeon, with complaints of back pain and diarrhea. Prior to that date, Dr. Jeon had treated plaintiff for kidney and/or urinary tract infections. With these conditions, plaintiff had experienced back pain as one of his symptoms, which is not uncommon. Therefore, when plaintiff exhibited back pain on 11 March 1996 as well as evidence of an infection, Dr. Jeon repeated the same course of treatment he had recommended previously when plaintiff had exhibited similar symptoms.
5. Plaintiff returned to Dr. Jeon's office on 25 April 1996, and reported continued back pain. On that date, Dr. Jeon's associate considered a urinary tract infection and a muscular strain as possible causes of plaintiff's back pain. Plaintiff next saw Dr. Jeon on 27 June 1996, when he again complained of diarrhea and low back pain. Dr. Jeon's course of treatment remained unchanged, and plaintiff was prescribed an antibiotic. However, plaintiff's complaints of low back pain continued through 2 August 1996, when he was referred by Dr. Jeon to Dr. Ira Hardy, a neurosurgeon.
6. Dr. Hardy examined plaintiff on 7 August 1996. In his records, Dr. Hardy noted that plaintiff had been treated with several courses of antibiotics during the previous months for a suspected kidney infection. Dr. Hardy made an initial diagnosis of lumbar disk syndrome and referred plaintiff for additional tests.
7. Pursuant to Dr. Hardy's recommendations, plaintiff underwent a MRI on 12 August 1996, which revealed a left sided disc protrusion at L5-S1 and a conjoined nerve root on the right at L5-S1. Additionally, X-rays were taken of plaintiff which revealed sacralization at the L5 level. Plaintiff then returned to Dr. Hardy who reviewed the results of these studies and recommended that plaintiff began a course of physical therapy.
8. During the period of his physical therapy, plaintiff reported significant back pain to Dr. Hardy on 27 August 1996. In response, Dr. Hardy removed plaintiff from work for the duration of his physical therapy, restricted him from driving except to his therapy appointments and restricted him from leaving the house except for aerobic walking.
9. Following the completion of his physical therapy, plaintiff's back pain decreased and he was eventually released to return to light duty work consisting of working half days on 7 October 1996. Plaintiff worked in this capacity for two weeks before he began to experience increased back pain along with numbness and tingling in his left leg. Presented with these symptoms, Dr. Hardy removed plaintiff from work until further testing could be performed. To date, plaintiff has not returned to work for defendant.
10. On 30 October 1996, a lumbar myleogram and CT scan were performed. These tests revealed a disc herniation at L4-S1 with a slight indention of the dural sac and a malformation of the nerve root at S1. Based on these results, on 6 November 1996, Dr. Hardy recommended a series of steroid injections in an attempt to alleviate plaintiff's pain without having surgery. However, plaintiff did not return for additional appointments and treatment because he no longer had health insurance.
11. Following his injury, plaintiff did not immediately fill out an accident report. The first time plaintiff raised the issue of workers' compensation benefits was in August 1996 when he spoke to Ms. Jerri Mills, defendant's human resources administrator. Plaintiff did not complete and submit an Industrial Commission Form 18 until 11 September 1996.
12. Plaintiff's delay in providing written notice of his injury to defendant is reasonably excused. Initially, plaintiff was unaware of the true nature of his injury and believed his health insurance would cover any medical expenses. This was then followed by an extended period of time during which plaintiff's back pain was treated as being the result of some sort of infection. It was not until Dr. Hardy correctly diagnosed plaintiff in August 1996 that plaintiff knew the nature and extent of his injuries.
13. Defendant had actual notice of plaintiff's injury and was in no manner prejudiced by the delay in providing written notification.
14. In this case, there has been some dispute as to the exact date upon which plaintiff's injury occurred. At the hearing on 11 April 1997, plaintiff testified that he sustained his back injury on 7 March 1997. He further testified that he informed a co-worker on that date of his injury. Although this co-worker could not recall the exact date, he did confirm that this had occurred sometime in March of 1996. On his Form 18, plaintiff was less specific that in his testimony and indicates that the date of his injury was in March of 1996, with no exact date is being given. However, based on the entire record, plaintiff has produced sufficient evidence that he sustained his back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration.
15. On or about 7 March 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned.
16. Based upon the medical evidence and all reasonable inferences therefrom, the specific traumatic incident plaintiff sustained on or about 7 March 1996 caused or significantly contributed to his disc protrusion and herniation.
17. As the result of his specific traumatic incident, plaintiff has been unable to earn wages in his former position with defendant employer or in any other position for the period of 21 October 1996 through the present and continuing.
18. On or about 7 March 1996, plaintiff's average weekly wage was $374.56, yielding a compensation rate of $249.83.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about 7 March 1996, plaintiff's average weekly wage was $374.56, yielding a compensation rate of $249.83. G.S. §97-2(5).
2. Plaintiff has provided a reasonable excuse for the delay in providing defendant with written notice of his injury and claim, and defendant was in no manner prejudiced by this delay. G.S. § 97-22.
3. Based on the entire record, plaintiff has produced sufficient evidence that he sustained his back injury during a judicially cognizable time period and that it was not the result of a gradual deterioration. Fish v. Steelcase, Inc.,116 N.C. App. 703, 707, 449 S.E.2d 233, 237 (1994), cert.denied, 339 N.C. 737, 449 S.E.2d 233, 237 (1994). On or about 7 March 1996 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant in the form of a specific traumatic incident of the work assigned. G.S. § 97-2(6).
4. As the result of his specific traumatic incident, plaintiff is entitled to be paid by defendant temporary total disability compensation at the rate of $249.83 per week for the period of 21 October 1996 through the present and continuing until such time as he returns to work or until further order of the Commission. G.S. § 97-29.
5. As the result of his specific traumatic incident, plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred. G.S. § 97-25; G.S. § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay to plaintiff temporary total disability compensation at the rate of $249.83 per week for the period of 21 October 1996 through the present and continuing until such time as he returns to work or until further order of the Commission. From the amount which has accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendant shall pay for all medical expenses incurred or to be incurred as the result of plaintiff's specific traumatic incident.
3. A reasonable attorney's fee in the amount of twenty five percent (25%) of the compensation awarded to plaintiff is approved for counsel for plaintiff. From the amount of compensation which has accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check thereafter.
 S/_________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/______________________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/______________________ RENÉE C. RIGGSBEE COMMISSIONER